LIBERTY IRON WORKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4398. Promulgated February 18, 1927.

1. Value of plant and equipment acquired by petitioner, and cost thereof for purpose of computing amortization allowance, determined.

2. Amortization allowance reduced by the amount awarded petitioner by the United States as loss in value of special facilities chargeable to canceled contract.

3. Petitioner *held* entitled to deduct from 1918 income the net loss sustained in 1919, if any, which is to be determined by a reaudit of its 1919 return.

4. Amount of expenditures made in 1917 *held* not deductible from 1918 income.

*Theo. J. Roche, Esq.,* for the petitioner.
*A. Calder Mackay, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes for the calendar years 1918 and 1919, in the respective amounts of $39,196.89 and $423.45. The questions for decision are: (1) The value and cost to the petitioner of certain properties acquired in 1918 for the production of aeroplanes for the United States War Department, upon which depends the amount allowable for amortization. (2) Whether the petitioner sustained a net loss in 1919 which it may deduct from 1918 income. (3) Whether certain expenditures made in 1917 may be deducted from 1918 income.

FINDINGS OF FACT.

The petitioner is a California corporation, with its principal office at Sacramento, and during the year 1918 was engaged in the manufacture of aeroplanes under contracts with the United States Government.

The basic plant and equipment used by the petitioner in the construction of aeroplanes were formerly owned by the Globe Iron Works, which was incorporated about 1912. The Globe Iron Works issued bonds in the amount of $100,000 secured by a deed of trust upon its property, dated December 27, 1912. Between 1912 and some time in 1914 it retired $30,000 of the bonds. In 1914 it was forced to close due to financial difficulties. Thereafter, some of the creditors of the company having unsecured claims against the company assigned their claims to the San Francisco Board of Trade and that organization caused certain assets of the company, not covered by the deed of trust, to be sold.

After the Globe Iron Works had defaulted in payment of interest on its bonds, the trustee on May 10, 1915, sold the property secured by the trust deed to one J. M. Henderson, Jr., who represented the holders of the bonds outstanding in the amount of $70,000. By deed dated June 3, 1915, jointly executed by the trustee under the trust deed and the Globe Iron Works, the property of the latter was conveyed to Henderson. Although this deed was absolute in form, the title conveyed by it was in fact taken by Henderson as trustee for the bondholders who became the beneficial owners of the property.

The bonds of the Globe Iron Works were owned by the persons and in the amounts as follows:

| | |
|---|---:|
| Fort Sutter National Bank | $35,000 |
| Mrs. Anna Cadle | 15,000 |
| San Francisco Board of Trade | 13,000 |
| United States Farm Lands Co | 5,000 |
| S. H. Jones | 2,000 |
| Total | 70,000 |

Henderson was the president of the Fort Sutter National Bank; he represented Mrs. Cadle under a power of attorney; he was a member of the San Francisco Board of Trade and its authorized representative. S. H. Jones was Henderson's attorney.

Between the time in 1915 when title was conveyed to Henderson and the early part of 1917, numerous unsuccessful efforts were made to dispose of the property at a price approaching the face value of the outstanding bonds. Offers were made for the purchase of the foundry which was a part of the Globe plant, but it was deemed

inadvisable to sell the plant except as a whole. The real estate consisted of about four and one-half acres across the American River from Sacramento, adjacent to the main line of the Western Pacific Railroad, with which the plant was connected by a spur track about 800 feet in length. There were five large buildings on the property, three of which, namely, the pattern shop, the foundry, and the machine and forge shop, were of cement block construction with corrugated iron roofs. Other buildings and improvements included a machine shop, a warehouse, transformer house, tank house, water system, fuel oil tanks, steam plant, wagon scale, telephone system, and a large quantity of machinery. The buildings were constructed in 1910 or 1911. When the Globe Iron Works discontinued operations it greased the machinery to protect it and placed a watchman on the premises.

Shortly after the entrance of the United States into the World War in 1917, Henderson was approached by one John A. Jordan, an aeroplane expert, and questioned as to whether he would be interested in the manufacture of aeroplanes at the Globe plant if it were shown that the plant was adaptable to such use. The proposition interested Henderson and he so advised Jordan. Thereafter, a Government representative examined the Globe properties and reported favorably upon their adaptability for the manufacture of aeroplanes. While the investigation of the plant was being made, O. A. Robertson became interested in the proposition and requested of Henderson to be allowed to participate in the event the plant was found suitable. Robertson was a capitalist and president of the United States Farm Lands Co.

About this time, June or July, 1917, Henderson interviewed the holders of the bonds of the Globe Iron Works to determine their attitude towards Jordan's proposition. He found that none of them desired to participate, but they were willing to have Henderson and Robertson take over the property and engage in the manufacture of aeroplanes on condition that they (Henderson and Robertson) guarantee the new bonds they proposed to issue in place of the Globe Iron Works bonds.

About July, 1917, upon invitation of an official of the War Department, Henderson and Jordan visited Washington with the object of securing contracts for the manufacture of aeroplanes for that Department. They did not obtain any contracts at that time, but they were assured by officials of the War Department that they would be awarded a contract for the manufacture of 300 planes.

Under date of July 12, 1917, Henderson and Robertson, as parties of the first part, and Jordan, as party of the second part, entered into an agreement whereby the parties of the first part were to form a corporation and to convey to it the plant and equipment of the

Globe Iron Works for the consideration of 80,000 shares of stock of the corporation. Bonds of the new corporation were to be issued in an amount sufficient to take up and liquidate the $70,000 indebtedness of the Globe Iron Works. The parties of the first part were to subscribe for and purchase the remainder of the preferred stock of the new corporation in the amount of $100,000, and for every share of preferred stock issued to them they were to receive as bonus stock seven-tenths of a share of common stock, and at the same time there was to be issued to Jordon three-tenths of a share of the common stock. Jordan's stock, however, was to be placed in escrow until such time as the bonds and preferred stock were retired.

On September 24, 1917, Henderson and Robertson and three others, as directors, executed articles of incorporation of the Liberty Iron Works, the petitioner herein. The company was to. have a bond issue of $70,000 and was capitalized at $280,000, of which $180,000 was· to be preferred stock and $100,000 to be common stock, all stock to be of the par value of $1 per share. These articles were filed with the Secretary of State of California on September 26, 1917, and on the same date a certificate of incorporation was issued. On or about the same date an application to sell its capital stock was filed by the petitioner. This application set forth in part that:

It is proposed to buy from Henderson and Robertson the Globe Iron Works situated in North Sacramento, California, for $150,000, which is the reasonable and fair value of said property and its present equipment. To pay for said plant the corporation proposes to issue to the said Henderson and Robertson 80,000 shares of its preferred stock and to assume an indebtedness of $70,000 now outstanding against said plant, and held by Henderson and Robertson.

On November 8, 1917, amended articles of incorporation were executed setting forth more fully the purposes for which the petitioner was organized, the first of which is stated to be:

To purchase and take over from J. M. Henderson, Jr. and O. A. Robertson that certain manufacturing plant owned by them, located at North Sacramento, and commonly called "The Globe Iron Works," consisting of real estate, buildings and machinery for which said sellers are to receive 99,995 shares of the common stock of the Corporation, Eighty Thousand shares (80,-000) of preferred stock and bonds of the Corporation for Seventy Thousand Dollars ($70,000) out of a bond issue composed of 70 bonds of $1,000 each * * *.

By deed dated November 9, 1917, Henderson conveyed to the petitioner the properties formerly owned by the Globe Iron Works.

On December 21, 1917, the petitioner executed an amended and supplemental application for permission to sell its capital stock and bonds. On December 24, 1917, the State Corporation Commissioner issued a certificate reading in part as follows:

1st. To issue 99,995 shares of its common capital stock, 80,000 shares of its preferred capital ·stock, and bonds of said corporation, not exceeding in their

aggregate face value $70,000, to J. M. Henderson, Jr. and O. A. Robertson, in exchange for all that certain real and personal property described in said application and in the mortgage or deed of trust, to which reference is hereinafter made, free from all liens and encumbrances, save only the lien of any taxes thereon, the payment of which is not now delinquent.

2nd. To sell and issue to said J. M. Henderson, Jr. and O. A. Robertson, or either of them, 100,000 shares of its preferred stock at par for cash, lawful money of the United States, and so as to net said applicant the full amount of said selling price thereof.

Prior to that time five shares of common stock had been issued to the directors as qualifying shares. Thereafter, but prior to December 31, 1917, bonds of the petitioner in the amount of $70,000, secured by a deed of trust on its property, were executed and delivered to Henderson and Robertson for delivery to the holders of the bonds of the Globe Iron Works. The 80,000 shares of preferred stock referred to in the articles of incorporation as a part of the purchase price of the property, and the remaining 99,995 shares of common stock were issued between December 24 and December 31, 1917. Of this preferred stock Henderson and Robertson each received one-half, or 40,000 shares. During 1917 Henderson and Robertson paid in to the corporation $46,000 and received that amount of the preferred stock which they had agreed to purchase, and in 1918 they paid in the balance of $54,000 in accordance with their agreement.

After the Globe plant had been determined to be suitable for the manufacture of aeroplanes and at the time of its acquisition by the petitioner, it had a fair market value of at least $150,000, of which amount $20,000 represented the fair market value of the land.

In September, 1917, the petitioner received an order from the War Department for the construction of 300 aeroplanes to cost $1,425,000. This order was subsequently canceled, and other orders which were completed during 1918 were received as follows:

| Date of order. | Article. | Amount. |
| --- | --- | --- |
| Mar. 7, 1918 | 100 airplanes | $450, 000. 00 |
| Aug. 9, 1918 | Spare parts | 73, 952. 50 |
| Aug. 26, 1918 | 100 airplanes | 400, 000. 00 |
| Sept. 4, 1918 | Spare parts | 11, 749. 50 |
| Sales to Mather Field subsequent to June 13, 1918 | Spare parts, etc | 31, 647. 51 |
| | | 967, 349. 51 |

On October 16, 1918, the petitioner was given an order for the construction of 100 aeroplanes, but on November 14, 1918, it was notified of the suspension of the order and no part of it was completed. The petitioner shortly thereafter closed its plant and did no manufactur-

ing after the last of the year 1918. The only business it conducted in 1919 was the winding up of its affairs.

On April 25, 1919, the petitioner received a settlement award of $160,411.01 for the cancellation of the order it received in October, 1918, and which was suspended in November, 1918, before completion. Of the amount of the award there was paid to the petitioner during 1919 the sum of $151,775.12. Included in the award was an amount of $22,085.61 for loss in value of special facilities chargeable to the canceled contract.

The amount paid the petitioner under the award, $151,775.12, was included in its income reported for the year 1919.

During 1917 the petitioner expended the sum of $9,407.76, consisting of the following items:

| | |
|---|---:|
| Labor, wages, etc. (nonproductive), fuel, light, power, etc_ | $4, 634. 17 |
| Preliminary _____ | 2, 083. 04 |
| Stationery, postage, etc_____ | 802. 30 |
| Miscellaneous _____ | 1, 888. 25 |
| Total_____ | 9, 407. 76 |

The petitioner had no income in 1917.

In determining the deficiency for 1918 the Commissioner computed the amortization allowance on the basis of the property acquired in 1917 having a fair market value of $70,000. The petitioner made additions to its property in the amount of $101,859.19, which was included by the Commissioner as an amount subject to amortization.

The petitioner exchanged its plant in 1921 for bonds of the face value of $100,000 and on the transaction paid a commission of $5,000 of the bonds received. The bonds were actually worth only 50 cents on the dollar, making a net amount of $47,500 received by the petitioner for its property.

OPINION.

ARUNDELL: The Commissioner does not dispute that the petitioner is entitled to a deduction for the amortization of the plant and equipment acquired in 1917 for the manufacture of aeroplanes for the United States War Department. Nor is there any dispute as to the cost of subsequent additions for which the petitioner is entitled to an amortization deduction, both parties agreeing upon the amount of $101,859.19 as the cost of the additions. It is the cost to the petitioner of the plant and equipment acquired in 1917 that is in controversy.

The Commissioner has computed the deficiency upon the basis of a value of the plant and equipment of $70,000, and a cost to the petitioner of that amount. The petitioner claims the sum of $150,000

as the cost to it of the Globe Iron Works properties, including the land, which sum was paid by stocks and bonds, and which represents the actual value of the properties at the time of acquisition.

We have found as a fact that the properties acquired by the petitioner had a value of $150,000 at the time acquired by the petitioner. This value is amply supported by testimony of men familiar with the character and condition of the land and buildings and the state of preservation of the machinery. As to the cost of the property to the petitioner, the record is clear that the officers of the petitioner considered the Globe properties to be worth $150,000, and that they intended to pay and did pay that amount by the issuance of $70,000 in bonds and $80,000 in preferred stock. The Commissioner takes the position that the sale was directly between the equitable owners of the Globe Iron Works properties (the bondholders) and the petitioner, as Henderson and Robertson did not have title to the properties. This is controverted by the evidence which shows that Henderson acquired the record title by deed dated June 3, 1915, which, for anything we know to the contrary, he had power to convey, and further the deed by which the petitioner acquired the property was a deed given by Henderson.

Our conclusion on the points we have so far considered are that the properties of the Globe Iron Works at the time of acquisition by the petitioner had a value of $150,000 and that the petitioner acquired them at that price.

Included in the amount awarded the petitioner by the United States in 1919 for cancellation of the order given in October, 1918, was an amount of $22,085.61 awarded for loss in value of special facilities chargeable to canceled contract. This amount, $22,085.61, should accordingly be subtracted from the amount which would otherwise be subject to deduction for amortization in accordance with our findings and opinion set forth above. This is in accordance with the opinions heretofore rendered in *Appeals of G. M. Standifer Construction Corporation*, 4 B. T. A. 525, 558, and *Peninsula Shipbuilding Co.*, 5 B. T. A. 739.

The record does not show the changes made by the Commissioner in the items listed by the petitioner in its return for the year 1919, and the petition filed sets forth no allegations of error with respect to that year. However, as the Commissioner has determined a deficiency for 1919 and the petition specifically sets forth that the deficiency for that year is in controversy, it is within our jurisdiction to take into consideration the facts presented with respect to that deficiency. Counsel for the Commissioner agreed at the hearing that a reaudit of the petitioner's 1919 return would be made so as to properly reflect the amount of $22,085.61 received in that year as an award for loss in value of special facilities. If a reaudit discloses

a net loss for the year 1919, as the result of the allowance of the item of $22,085.61, the amount of the net loss determined should be allowed as a deduction from 1918 income under the provisions of section 204 of the Revenue Act of 1918.

The petitioner claims a deduction from 1918 income of the amount of $9,407.76 expended in 1917, for the reason that it had no income in the latter year against which to deduct this amount. The evidence does not show these expenditures to have been of such a nature as to permit of their deduction as expenses in any year, and on this state of the record we must affirm the action of the Commissioner in disallowing as a deduction for 1918 the amount claimed.

*Judgment will be entered on 15 days' notice, under Rule 50.*